UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MONA SANCHEZ, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC.,<br>               Defendant. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mona Sanchez ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" or "Class members"), brings this Class Action Complaint against Defendant Evenflo Company, Inc. ("Evenflo" or Defendant"), based on her individual experience and personal information and the investigation of her counsel.

## INTRODUCTION

1.    This case concerns misleading and fraudulent marketing and sales practices by Defendant Evenflo in its attempt to increase sales of a children's booster seat that Evenflo designed, manufactured, and distributed.

2.    Booster seats are designed for children who have grown too large for car seats—which usually utilize an internal harness, and generally are safer—but may be too small for the use of a seat belt.

3.    Evenflo began selling the Big Kid Booster Seat ("Big Kid Booster") in early 2000 in an attempt to keep pace with market leaders following the release of guidelines in certain states requiring that young children use either a car seat or a booster seat.

4.      In 2018 alone, side-impact crashes caused more than a quarter of the deaths of children under the age of 15.  Aware that a primary concern of consumers in purchasing booster seats is child safety, Evenflo marketed itself as a leader in designing and manufacturing booster seats that prioritize safety and child well-being.

5.      Evenflo's practices departed sharply from its words.  On its websites, product packaging and in marketing for the last ten years, Evenflo falsely advertised that the Big Kid Booster is safe and provides protection in the case of a side-impact automobile accident. Evenflo also misleadingly represented that its in-house side-impact testing is rigorous and simulates realistic conditions.  Evenflo also misleadingly represented that the Big Kid Booster met and exceeded federal side-impact standards.  In reality, there are no federal standards regarding side-impact testing for booster seats and Evenflo's testing was a departure from the side-impact collision testing the federal government conducts. The federal government's testing involves collisions into a barrier; Evenflo's testing only involved speeding a bench to 20 miles per hour, then slowing it down.

6.      Evenflo's testing was a failure by any reasonable definition. In an investigative report, *ProPublica* revealed video and photographic evidence of Evenflo's internal testing simulating a side-impact crash into a vehicle with the Big Kid Booster and a child size dummy. The videos show that in a side-impact collision, a child strapped in the Big Kid Booster will be at significant risk of debilitating injury, including internal decapitation resulting in paralysis,[1] traumatic brain injury, and severe internal organ damage.

7.      The Big Kid Booster seats passed Evenflo's "rigorous" in-house, side-impact testing with flying colors as long as the child dummy did not end up on the floor of the

---

[1] Internal decapitation, formally known as atlanto-occipital dislocation, "is defined as disruption of the ligaments and other supporting soft tissue [in the neck] as indicated by displacement in either a transverse or vertical direction." Hariah Hosalker et al., *Traumatic atlanto-occipital dislocation in children*, 87(11) J. OF BONE AND JOINT SURGERY AM. VOL. 2480-88 (2005), available at https://www.ncbi.nlm.nih.gov/pubmed/16264124. The injury can cause paraplegia. *See id.*

automobile and the booster seat did not get smashed into pieces.  As a marketing tool to consumers, Evenflo sewed a label into the side of the Big Kid Booster seats, claiming the seats were "SIDE IMPACT TESTED."

8.      Evenflo's marketing of the Big Kid Booster seats is also misleading in other respects.  For years, federal authorities and medical groups specializing in child safety have advised that children remain in a harnessed car seat until the child has outgrown that seat, and in any instance until the child is 40 pounds. The Canadian government has banned companies from claiming that booster seats are safe for children who weigh less than 40 pounds.

9.      Ignoring federal guidelines and authoritative voices on child safety, Evenflo marketed the Big Kid Booster as safe for children who weigh as little as 30 pounds. At other times, Evenflo failed to include a minimum age on the Big Kid Booster.

10.      Aware that its practices were banned in Canada, Evenflo created a separate line of marketing materials and owner's manuals for the Canadian market, advertising that the Big Kid Booster was not safe for any children who weigh less than 40 pounds. Evenflo's Canadian user manual advised that a failure to follow the 40-pound weight requirement could lead to the "serious injury or death" of a child. These materials contradicted the materials that Evenflo provided its U.S. consumers.

11.      The *ProPublica* investigative piece also reported that Evenflo executives have known since at least 2008 that the minimum weight it had advertised in the U.S. market was dangerous.[2] But despite internal pressure from Evenflo employees and a wealth of evidence that 40 pounds is the proper minimum weight for a booster seat, Evenflo executives refused to change the minimum weight of the Big Kid Booster from 30 pounds.

---

[2] *See* Daniela Porat & Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, PROPUBLICA (Feb. 6, 2020, 5:00 AM), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.

12.     As of February 2020, Evenflo was still providing the U.S. market materials claiming that the Big Kid Booster is safe for children weighing as little as 30 pounds, and lauding Evenflo's rigorous side-impact testing.

13.     Given Evenflo's egregious conduct, the U.S. House Committee on Oversight and Reform and the House Subcommittee on Economic and Consumer Policy have opened an investigation of Evenflo's marketing and testing of its Big Kid Booster seats.

14.     Evenflo engaged in the misleading and fraudulent conduct described herein because it concluded (albeit wrongfully) that women, the primary purchasers of its products, conduct very little research into safety claims as they assume the products are safe.  The truth is Evenflo held itself out as a trusted brand that people could trust, was in possession of superior knowledge regarding federal requirements and its own internal side-impact testing and thus was in a position to mislead and take advantage of people.

15.     If Plaintiff and the proposed Class members had known the truth about Evenflo's "side-impact" tests and that the Big Kid Booster was not safe for children under 40 pounds, they would not have bought the Big Kid Booster seat.

16.     Plaintiff, on behalf of herself and those similarly situated, brings claims for fraudulent concealment, unjust enrichment, breach of express warranty, breach of implied warranty of merchantability, and violations of California's consumer protection statutes. Plaintiff seeks damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; the number of members of each of the proposed Class exceeds 100; and minimal diversity exists because at least one Plaintiff and Defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Defendant as Evenflo is headquartered in Canton, Massachusetts, which is in this District, and it conducts substantial business in this State and in this Judicial District and/or the conduct complained of occurred in and/or emanated from this State and Judicial District.

19.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District; has advertised in this District; and has received substantial revenue and profits from its sales in this District. Accordingly, a substantial part of the events and/or omissions giving rise to the claims occurred within this District.

## THE PARTIES

20.     Plaintiff Mona Sanchez is a citizen and resident of the State of California, residing in Moreno Valley.

21.     Plaintiff Sanchez bought the Evenflo Big Kid Booster seat in 2017 for her son at a Walmart located at 17251 Foothill Blvd, Fontana, California 92335.  At the time of her purchase, her son weighed approximately 32 pounds.

22.     Plaintiff Sanchez purchased the Evenflo Big Kid Booster seat after reading the product packaging, which included representations that the Big Kid Booster seat was safe for children who weighed less than 40 pounds.

23.     Prior to her purchase, Plaintiff Sanchez researched the Evenflo Big Kid Booster seat and various other seats online, and ultimately purchased the Big Kid Booster model because of, among other things, its safety advertisements and/or marketing, including that the Big Kid Booster seats were side-impact tested.

24.     Had Plaintiff Sanchez known about the unsafe nature of Evenflo's Big Kid Booster seat, including that it was not appropriate for children weighing less than 40 pounds and that internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries, she would not have bought it.

5

25.     Defendant Evenflo Company, Inc. is a Delaware corporation, and is a wholly-owned subsidiary of Goodbaby International Holdings Limited. Evenflo is headquartered in Canton, Massachusetts.  Evenflo designs, manufactures, markets and distributes a line of child seats, strollers, booster seats, and home gear like high chairs and safety gates.

26.     In this Complaint, when reference is made to any act, deed or conduct of Evenflo, the allegation means that it engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Evenflo.

## FACTUAL ALLEGATIONS

### A.     Background.

27.     Car seats and booster seats provide protection for children in the event of a car crash. Car seats generally feature an internal five-point harness that secures a child's shoulders and hips and goes between the legs. These car seats secure children's bodies so they are less likely to be ejected from the seat during a crash.

28.     Booster seats are specifically designed for children who are too tall and/or heavy for car seats, but too small to properly utilize a car's seat belt system. A booster seat positions a child higher relative to the seat belt, such that the seat belt is able to fit properly across the middle of the shoulder and across the upper thighs, which are the strongest parts of a child's body. Some booster seats also include high backs, which provide neck and head support.

29.     Booster seats generally provide less protection than a car seat, and authorities recommend against transitioning a child from a car seat to a booster seat before the child has outgrown the maximum height, weight, and age guidelines of a car seat.

30.     Since the early 2000s, the American Academy of Pediatrics ("AAP") has advised that children who weigh 40 pounds or less should use a seat with its own internal harness, as opposed to a booster seat that utilizes an automobile's seat belt.

31.    In 2011, the AAP released a safety announcement, advising that switching children from a harnessed child seat to a booster once the child became 40 pounds was not an ideal safety practice. The AAP recommended that a child should remain in a harnessed seat until the child outgrew it.

32.    The National Highway Traffic Safety Administration ("NHTSA") similarly recommends that parents keep children in a car seat "until he or she reaches the top height or weight limit allowed by [the] car seat's manufacturer."[3]

33.    The Canadian government has gone further. Since 1987, the Canadian government has not permitted the sale of booster seats for use by children who weigh less than 40 pounds.

## B.    Evenflo's Booster Seats.

34.    In the early 2000s, various states began enacting legislation requiring that children of a booster seat size or age use booster seats. By 2009, 13 states had enacted such legislation.[4] In response to the growing demand, Graco Children's Products Inc. ("Graco") began producing a low-cost booster seat, seeking to provide an alternative to the more expensive brands, which can cost upwards of $200.

35.    Evenflo, hoping to gain a share of the booster seat market, began designing, manufacturing, marketing, and distributing the Big Kid Booster seats for sale to the public at the price range of $39.99 and $49.99, approximately $10 less than the average cost of the Graco seat.

36.    Child safety is of paramount concern to parents when choosing to buy a booster seat for their children. The consumer website Safety.com—an independent review site—lists three reasons that children require booster seats, with safety being the first consideration, stating:

---

[3] CAR SEATS AND BOOSTER SEATS, https://www.nhtsa.gov/equipment/car-seats-and-booster-seats (last visited Apr. 13, 2020)
[4] Jin Yung Bae, et al., *Child Passenger Safety Laws in the United States, 1978-2010: Policy Diffusion in the Absence of Strong Federal Intervention*, 100 SOC. SCI. MED. 30-27 (2014), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3899584/.

> According to the American Society for the Positive Care of
> Children (ASPCC), kid boosters seats reduce the risk of serious
> injuries by 45 percent. With the right booster seat, you'll have
> peace of mind knowing that even if there's road trouble, your child
> is secured in the car [] safely with the right belts and protective
> padding.[5]

37.     Evenflo tailored its marketing to meet parents' safety concerns.  Since Evenflo
began manufacturing the Big Kid Booster, Evenflo branded itself as a market-leader in
producing safe booster seats for children. The company's website has a page dedicated to touting
the importance of safety, and the exacting testing regime that the company applies to its
products. The site emphasizes that Evenflo "actively review[s] the latest scientific research." It
goes on:

> Safety isn't just a word to us, it's in our DNA. For nearly 100 years
> Evenflo has been a leader in baby and juvenile products. We
> rigorously test all of our products, repeatedly. Every bounce, twist
> turn and latch is tested to make sure our products are safe, durable,
> convenient and comfortable.[6]

38.     Despite these claims, Evenflo was not a market leader in safety. First, Evenflo
lied about its "side-impact testing" and gave consumers a false sense of security. Second,
Evenflo misleadingly represented the Big Kid Booster as safe for children under 30 pounds.

39.     Evenflo's marketing campaign worked, and the Big Kid Booster was a success for
Evenflo. The company became a market leader, and sold more than 18 million Big Kid Booster
seats. An internal design review called the Big Kid Booster "the reliable workhorse in the
Evenflo platform stable."[7]

---

[5] THE BEST BOOSTER SEATS, https://www.safety.com/booster-seats/ (last visited Apr. 13, 2020).
[6] EVENFLO: SAFETY AND LEARNING, https://www.evenflo.com/safety-learning/safety-learning.html (last visited Apr. 13, 2020).
[7] See Porat & Callahan, supra note 1.

**C.**    **Evenflo Misleadingly Markets the Side Protection of the Big Kid Booster.**

40.    A key safety concern parents have in considering booster seats is protection from impacts to the side of the vehicle. Safety.com notes that "[t]he safest and best kid booster seats offer Side Impact Protection, and are made with energy-absorbing foam impact cushions on both sides of the booster seat."[8]

41.    Evenflo's marketing materials note that the specific purpose of a booster seat is to prevent a child's lap and shoulder from dangerously shifting in an accident. Evenflo's website advises consumers that "a booster seat is not just intended to allow your child to see out the window; **it is a device designed to help properly position the lap and/or shoulder belt to restrain your child in the event of a collision**."[9]

42.    Early Big Kid Booster models lacked even the perception of side-impact protection, which Evenflo management thought hindered further profit. Though the Big Kid Booster was a success for Evenflo, the Big Kid Booster still lagged in sales behind Graco's booster seats. Evenflo executives credited Graco's sales with the "on-shelf perception" that Graco's seats had more side support.

43.    Attempting to better compete with Graco, Evenflo added side wings to the Big Kid Booster. The side wings are curved extensions that protrude from the backrest of the Big Kid Booster.

44.    The primary purpose of the side wings was not to provide actual protection to children in the event of a side impact; rather, the purpose was to deceive parents into believing that the side wings protected children. Internal testing showed that the Big Kid Booster with side wings did not provide any better protection than the Big Kid Booster without side wings.  When *ProPublica* showed video of the testing to Dr. Ben Hoffman, an Oregon pediatrician and leading author of the Academy of Pediatrics' policy statement on car seats, he said, "This looks horrific,

---

[8] THE BEST BOOSTER SEATS, https://www.safety.com/booster-seats/ (last visited Apr. 13, 2020).
[9] EVENFLO: CHOOSING A BOOSTER CAR SEAT, https://www.evenflo.com/car-seats/booster/car-seat-guide/buying-guide-booster.html (last visited Apr. 13, 2020) (emphasis added).

and I can't imagine it being different in any way, shape or form better under real life circumstances." Internal Evenflo materials stated that the strategy behind including the side wings was "increased perceived side protection."[10]

45.    Evenflo was able to focus on customer perception, as opposed to the safety of the children riding in the Big Kid Booster, due to a dearth of federal safety standards in the area of side-impact testing. The federal government, however, does not mandate side-impact testing for booster seats. In fact, there are no standards or other testing that federal regulators require booster seat manufacturers to use for purposes of testing side-impact safety.

46.    Given the lack of any federal requirements, Evenflo designed its own test to use for purposes of marketing the Big Kid Booster line as "side-impact tested" and claimed that its "rigorous test simulates the government side-impact tests conducted for automobiles."[11] Evenflo's website claims that its "engineers developed the Evenflo Side Impact test protocol, which simulates the energy in severe 5-star government side impact tests conducted for automobiles."

47.    Evenflo's side-testing claims are false and/or misleading. Though the federal government does not mandate side-impact testing for booster seat manufacturers, federal tests exist, and they are more rigorous than Evenflo's tests. For example, one federal test involves pulling a car sideways at 20 miles per hour into a stationary pole, then analyzing whether test dummies dangerously shifted after the collision. Another test accelerates a 3,015-pound barrier to a speed of 38.5 miles per hour, then slams the barrier into the side of a car.

48.    Conversely, Evenflo's side-impact tests did not involve collisions. The tests involved placing a child-sized dummy into a Big Kid Booster, and then securing the Big Kid Booster to a bench, which was intended to simulate a car seat. The bench increased in speed to 20 miles per hour, then slowed down.

---

[10] *See* Porat & Callahan, *supra* note 1.
[11] *Id.*

49.     Even given Evenflo's relatively lax testing, the Big Kid Booster safety tests were a failure, and showed that the side wings did not increase the protection of the Big Kid Booster.

50.     The dummies in the Big Kid Booster with the curved wings were just as prone to lurching outside of the seats, with the seat belts slipping off the shoulders and straining the abdomen, presenting significant chances of internal organ damage and other injuries.

51.     *ProPublica* reported that all Big Kid Booster seats—irrespective of fabric, base, or model number—similarly failed to restrain the dummies lap and/or shoulder.[12]

52.     In determining whether the Big Kid Booster seats passed its side-impact testing, Evenflo ignored the potentially debilitating injuries that could result. Indeed, the only factors that Evenflo measured in determining whether the Big Kid Booster could withstand its side-impact testing were whether (1) the dummy stayed buckled into the Big Kid Booster, *i.e.*, the child would not have ended up on the floor, and (2) whether the Big Kid Booster broken into pieces. In other words, unless the child-dummy ended up on the automobile floor or the Big Kid Booster broke into pieces, Evenflo determined that the Big Kid Booster was safe for sale to the public, even if in real life a child suffered major organ damage, brain injury, or internal decapitation— for a child involved.

53.     Photographs and video stills of the testing speak to the uselessness of the Big Kid Booster's side wings in side-impact crashes:

---

[12] *Id.*









54.    Direct testing comparisons show that the Big Kid Booster models with side wings performed no better in side-impact testing than Big Kid Booster models without side wings:




55.     Incredibly, an Evenflo senior test technician testified that he would have identified all of the tests depicted in the foregoing photographs as a "success," because the dummies were not on the floor.  The technician, who had worked at Evenflo for 13 years, also testified in a deposition that every test he had ever run was a success.

56.     In 2008, Evenflo began marketing the new models of the Big Kid Booster, with the side wings, with a tag on the side of the seat that identified the Big Kid Booster as being "Side Impact Tested."[13]

57.     Recent product descriptions on consumer websites show that Evenflo continues to misleadingly market the Big Kid Booster as being "Side Impact Tested," claiming that the Big Kid Booster "meets or exceeds all applicable Federal Safety Standards and Evenflo's Side Impact Test Standard."[14]  Below is a photograph of a typical "Side Impact Tested" label on the Big Kid Booster seats.

---

[13] *Id.*

[14] EVENFLO BIG KID SPORT HIGH BACK BOOSTER CAR SEAT, GOOD TWO TONES, https://www.walmart.com/ip/Evenflo-Big-Kid-Sport-High-Back-Booster-Car-Seat-Goody-Two-Tones/52502361 (last visited Apr. 13, 2020).



58.    *ProPublica's* report describes showing side-impact test videos to Dr. Ben Hoffman, a pediatrician and a leading author of the AAP's policy statement regarding car seats. Dr. Hoffman stated that the test results he witnessed could lead to abdominal, brain, and spinal injuries in a real child, including paralysis or death. Dr. Hoffman said that he hoped the videos would discourage parents from transitioning their children to a booster seat too early.[15]

59.    Evenflo's testing videos show that the crash dummies are thrown out of the shoulder belt with the head and torso careening outside of the Big Kid Booster.  According to Evenflo's own engineer, if a child's body moved in the direction as depicted in the video crash tests, the child would have a significant risk of serious injury to the head, neck and spine.

60.    A selection of customer reviews from Amazon.com shows that consumers have relied on the representations that Evenflo made regarding safety in making their purchases, and that dissatisfaction with the Big Kid Booster's safety features has caused these consumers to return the Bid Kid Booster and/or purchase another product:[16]

⭐☆☆☆☆  **Not safe**
Reviewed in the United States on February 6, 2020
Color: Sprocket | **Verified Purchase**

Heard on news this booster not safe. Side impact in crash. Very dissapointed as would return but window closed by 1 day. I purchased 2 and now will not use.

---

[15] *See* Porat & Callahan, *supra* note 1.
[16] AMAZON.COM: EVENFLO BIG KID AMP BOOSTER CAR SEAT, SPROCKET, https://www.amazon.com/product-reviews/B00AJSIVWW/ref=cm_cr_unknown?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar (last visited Apr. 13, 2020).

★☆☆☆☆  **unsafe booster seat**
Reviewed in the United States on February 6, 2020
Color: Sprocket  |  Verified Purchase

this item has been sighted as unsafe. CBS news 2/6/2020. I used it once. it definitely is not a safe seat for children. there is no way to secure this seat to the car. I have requested to return it

★☆☆☆☆  **So cheap made, low quality , narrow and uncomfortable !**
Reviewed in the United States on May 23, 2015
Color: Sprocket  |  Verified Purchase

Very clumsy ! Too light , and did not have impact absorbent . Too narrow too . Was very uncomfortable seat for my son.a piece in the back seems broken but the product made so cheap out plastic you could not tell if it's broken or its part of the cheap made process !
I returned and got Recaro booster . Extremely happy with it . So comfortable and protect my child's safety .

  Amazon Customer

★☆☆☆☆  **Look up information on seat before buying.**
Reviewed in the United States on February 15, 2020
Color: Sprocket  |  Verified Purchase

We had these seats for a short amount of time, before information came out about the safety of these seats. I was not surprised, because they did not appear to actually be safe.

## D.    Evenflo Misleadingly Markets the Weight Requirements of the Big Kid Booster.

61.    Evenflo appears to have done no independent, scientifically-approved testing to identify the proper height or weight for children using the Big Kid Booster.

62.    In 2007, Evenflo increased the minimum age requirement for the Big Kid Booster to three years old, and added a minimum height of 38 inches. Evenflo advised that a failure to follow these guidelines "can result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death."[17]

63.    However, Evenflo did not recall any Big Kid Boosters that Evenflo previously had sold to parents whose children did not meet the updated height and age minimums, nor did Evenflo inform those parents that the Big Kid Booster was not be safe given the updated standards.

64.    Evenflo's updated safety standards did not include increasing the minimum weight requirement for all Big Kid Booster's to 40 pounds.

65.    Evenflo's marketing and sales of the Big Kid Booster to children as light as 30 pounds violated Canada's regulations regarding booster seat safety. As a result, Evenflo recalled its Canadian products three times, most recently in 2012.

---

[17] *Id.*

66.    Evenflo responded to pressure from the Canadian government by marketing the product as safe only for children who weighed more than 40 pounds.

67.    Despite the Canadian recalls, and the warning from the American Academy of Pediatrics, Evenflo continued to market and sell the Big Kid Booster in the United States as safe for children under 40 pounds.

68.    Evenflo thus created two lines of marketing materials for the same Big Kid Booster: one for the Canadian market, in which Evenflo advertised the Big Kid Booster as safe for children who weigh 40 pounds or more, and one for the U.S. market, in which Evenflo advertised the Big Kid Booster as safe for children who weigh 30 pounds or more.

69.    Evenflo informed Canadian consumers that a child who weighs less than 40 pounds risked "SERIOUS INJURY or DEATH" in the Big Kid Booster.[18] Consumers in the United States received no such warning.

70.    Evenflo's user manuals memorialized this discrepancy. For example, Evenflo provided US consumers with the 2013 user manual for the Big Kid Booster Advanced/DLX that advises that children weighing as little as 30 pounds can use the Big Kid Booster.

## Child Requirements
- No restraint can guarantee absolute protection from injury in every crash.
- To use this child restraint properly, children **MUST** meet weight/size specifications as follows:

### With Backrest
- 13.6 to 49.8 kg (30 to 110 lbs)
- 102 to 145 cm (40 to 57 inches) tall
- Child is at least four years old.
- Ears below top of booster seat headrest

---

[18] *Id.*

71.    Evenflo provided an entirely different instruction manual for Canadian consumers, with the cover sheet noting that the manual is "For Canada Only."



72.    In contrast to the U.S. owner's manuals, the owner's manual directed to Canadian consumers advises that the safe weight for use is 40 pounds.



73.    The same Canadian owner's manual notes that a failure to conform to the height, weight, and age guidelines in the manual could result in "serious injury or death":

⚠ **WARNING**

**General Warnings**

- Failure to follow each of the following instructions can result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death. These instructions and the instructions

74.    In addition to its dangerous U.S. weight guidelines, Evenflo encouraged its customers to begin using a Big Kid Booster in lieu of a car seat with a harness before it was safe. Evenflo's owner's manuals state that, "Even children who have not outgrown their toddler seat can benefit from the use of a booster seat, if used properly."

75.    This advice contradicts NHTSA recommendations and AAP best practices. Both organizations recommend that children stay in a harnessed car seat until they have reached the maximum weight/height range of the car seat.

**E.    Evenflo Executives Rejected Pressure to Modify U.S. Safety Recommendations.**

76.    Evenflo executives were aware that both the AAP and the NHTSA recommended that children remain in harnessed seats until the child reached at least 40 pounds, and preferably when the child outgrew a harnessed child seat.

77.    *ProPublica* reported that, by February 2011, Eric Dahle, Evenflo's top engineer for booster seats, pressured the company to increase the minimum weight for the U.S.-marketed seats to 40 pounds, and to increase the minimum age range to four years old.[19]

---

[19] *Id.*

78.     Dahle advised that there is an "increased risk of injury" for children between three and four years old riding in booster seats rather than car seats, as they are immature and may not sit properly. Dahle advised against early transitions to booster seats, and wrote, "Keeping the seat at 30 lbs encourages parents to transition them earlier because they can, and the booster is a less expensive option." He advised that a harnessed child seat "is the better option. We should encourage that behavior by modifying the weight rating to 40 pounds. To overcome the misuse, we should follow the NHTSA Guidelines and increase the age rating to 4 yrs old also."[20]

79.     Dahle provided his colleagues with a 2010 federal report on booster seat effectiveness, which emphasized that three- and four-year-old children were safer in harnessed car seats, and that early transitions to booster seats may "present safety risks."[21]

80.     Dahle discussed the issue with senior management at Evenflo. Despite Dahle's concerns, and for the sake of maximizing corporate profits, Evenflo left the dangerously low weight minimum in place.

81.     McKay Featherstone, a senior marketing director at Evenflo, vetoed Dahle's recommendation.

82.     Featherstone asked, "[W]hy are we even talking about this. . . . I have looked at 40 lbs for the US numerous times and will not approve this." *ProPublica* released internal documents showing Featherstone's rejection of Dahle's safety recommendations.[22]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*

**FROM:** Featherstone, McKay
**SUBJECT:** RE: amp fixtures
**Date:** Wednesday, July 25, 2012 9:33 AM

Gregg, why are we even talking about this? It has always been this way in Canada so I don't understand why it is now a big problem that requires a $30k investment or us to change product. I have looked at 40 lbs for the US numerous times and will not approve this.

83.     As of February 2020, Evenflo continued to market the Big Kid Booster as safe for children who weigh less than 40 pounds, and it still continues to encourage parents to transition their children to a booster seat early. Evenflo's website states, "When your child reaches about 40 pounds, it's time to move her out of a convertible car seat and into a booster seat. Most boosters are designed to accommodate children from 30 to 100 pounds."[23]

**F.    Despite Knowing the Dangers, Evenflo Continues to Advertise the Big Kid Booster As Safe.**

84.     Evenflo's dangerously inaccurate and misleading marketing and design has resulted in tragic consequences for children who were using the Big Kid Booster. Despite knowing that its product has caused these injuries, Evenflo continues to claim it is a market leader in safe booster seats.

85.     In 2013, a three-year-old girl weighing about 37 pounds and seated in a Big Kid Booster suffered an internal decapitation following a side-impact automobile accident. The girl is now paralyzed from the neck down, and requires a ventilator to breathe. The family filed a lawsuit against Evenflo—*Arias v. Evenflo*—in the Southern District of Texas in 2015.

---

[23] EVENFLO: BOOSTER CAR SEAT BUYING GUIDE, https://www.evenflo.com/car-seats/booster/car-seat-guide/buying-guide-booster.html (last visited Apr. 13, 2020).

86.     Evenflo has been a defendant in at least three other cases filed by families on behalf of small children who have suffered similarly catastrophic injuries while in a Big Kid Booster.

87.     Despite knowing that its product and marketing has caused debilitating injuries to children, and despite knowing of the lawsuits relating to these injuries, Evenflo continues to make misrepresentations and material omissions concerning the safety of its products, including the Big Kid Booster. Evenflo's website claims, "To the Evenflo family nothing is more important that the safety, wellbeing, and development of children." As of February 2020, Evenflo was still producing materials claiming that the Big Kid Booster is safe for children who weigh as little as 30 pounds and is still claiming that the Big Kid Booster is side-impact tested.

88.     Evenflo's design and marketing is demonstrably dangerous. Evenflo's own testing shows that the seats are incapable of conforming to Evenflo's representations of the most important function of a booster seat: restraining a child in the event of a collision. Evenflo's statements that the Big Kid Booster is safe for children who weigh less than 40 pounds, and that the Big Kid Booster has passed rigorous side-impact testing, are false and dangerously misleading, have put innumerable children at risk, and directly have caused multiple children to have debilitating, lifelong injuries.

89.     Consumers who purchased the Big Kid Booster did not receive the benefit of the bargain. Based on Evenflo's general representations that its products conform to high safety standards, and specific representations regarding the Big Kid Booster, consumers reasonably believed that they were purchasing an item that: 1) conformed to guidelines from federal and professional organizations that provide guidance on child safety in automobiles, such as the AAP and NHTSA; 2) had been rigorously side-impact tested based on governmental standards for booster seats, and would restrain children in an accident; and 3) was safe for children who weigh less than 40 pounds. They did not purchase that item. Instead, they purchased an item that does

not properly protect children in the event of an auto accident, and that Evenflo knew was particularly dangerous for smaller children. Evenflo should be held to account.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule

90.     The claims alleged here did not accrue until Plaintiff and proposed Class members discovered that the Evenflo's Big Kid Booster seat models were unsafe in side-impact crash tests.

91.     Plaintiff could not have discovered with reasonable diligence that Evenflo's Big Kid Booster seat models are unsafe in side-impact crash tests within the time period of any applicable statutes of limitations.

92.     Plaintiff and proposed Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Evenflo's Big Kid Booster seat models are unsafe in side-impact crash tests, or that Evenflo's marketing of the Big Kid Booster seat models as "side-impact tested" was false and/or misleading.

93.     While Evenflo knew, and concealed the facts described above, Plaintiff and Class members could not and did not discover these facts until, at earliest, when ProPublica published its report on Evenflo's conduct on February 6, 2020.

94.     Accordingly, all applicable statutes of limitations have been tolled by operation of the discovery rule.

### Fraudulent Concealment

95.     Defendant has known that its Big Kid Booster seat models were unsafe in side-impact crash tests because according its own testing, children placed in Big Kid Booster seats are at risk of serious injury or death in side-impact crashes, and despite this knowledge, Evenflo continued to manufacture and sell these seats without disclosing this information to consumers. Instead, Evenflo affirmatively misrepresented its Big Kid Booster seats as "side-impact tested."

96.     Accordingly, any applicable statutes of limitations have therefore been tolled by Defendant's knowledge and active concealment.

## Estoppel

97.     Defendant was and is under a continuous duty to disclose to Plaintiff and proposed Class members the true character, quality, and nature of its Big Kid Booster seats. Defendant knowingly, affirmatively, and actively concealed the true character, quality, and nature of its Big Kid Booster seats.

98.     Plaintiff and proposed Class members reasonably relied upon Defendant's knowing, and affirmative misrepresentations and/or active concealment of these facts.

99.     Accordingly, Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

100.     Plaintiff brings this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of herself, and the following classes (collectively, the "Class"):

101.     The **Nationwide Class** is defined as follows: All persons in the United States who purchased an Evenflo Big Kid Booster seat between 2008 and the present.

102.     The **California Class** is defined as follows: All persons in the State of California who purchased an Evenflo Big Kid Booster seat between 2008 and the present.

103.     The Nationwide Class and the California Class are referred to herein as the "Class" unless otherwise specifically noted.

104.     Excluded from the proposed Class are: Defendant, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant; and judicial officers to whom this case is assigned and their immediate family members.

105.    Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

106.    **Numerosity (Fed. R. Civ. P. 23(a)(1))**.  The Class is so numerous that joinder of all members is impracticable. Based on information and belief, Evenflo sold approximately 18 million Big Kid Booster seat models to millions of individuals. The parties will be able to identify the exact size of the Class through discovery and Defendant's own documents.

107.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual members of the Class.  Questions common to the Class include, but not limited to the following:

      a.    Whether Defendant's Big Kid Booster seat models are unsafe in side-impact crashes;

      b.    Whether Defendant knew or reasonably should have known that its  Big Kid Booster seat models were unsafe in side-impact crashes;

      c.    Whether Defendant concealed from and/or failed to disclose to consumers material facts concerning its Big Kid Booster seats, namely, that its Big Kid Booster seat models are unsafe in side-impact crashes, including its proprietary test data showing children placed in its Big Kid Booster seat models are at risk of serious injury or death in side-impact crashes;

      d.    Whether Defendant made affirmative misrepresentations regarding the safety of its Big Kid Booster seat models as "side-impact tested;"

      e.    Whether Defendant made affirmative misrepresentations regarding the safety and appropriateness of its Big Kid Booster seat models for children weighing less than 40 pounds;

      f.    Whether Defendant was in possession of exclusive facts regarding the quality of its Big Kid Booster seats;

      g.    Whether Defendant's conduct was knowing and willful;

h.      Whether Defendant's marketing, advertising, packaging, labeling, and other promotional materials for its Big Kid Booster seat models were likely to deceive reasonable consumers;

i.      Whether Defendant made material omissions in its marketing, advertising, packaging, labeling, promotion, and sale of its Big Kid Booster seat models;

j.      Whether Defendant was unjustly enriched at the expense of Plaintiff and Class members;

k.      Whether Defendant's conduct constitutes a breach of express warranty;

l.      Whether Defendant's conduct constitutes a breach of the implied warranty of merchantability;

m.      Whether Defendant engaged in deceptive, unfair, unlawful and/or fraudulent business practices under California law;

n.      Whether Defendant's advertisement and representations concerning its Big Kid Booster seats constituted false advertising under California law;

o.      Whether Defendant violated the California Consumers Legal Remedies Act;

p.      Whether Plaintiff and Class members are entitled to damages and/or restitution, and in what amounts; and

q.      Whether Defendant should be enjoined from continuing the practices alleged herein.

108.    **Typicality (Fed. R. Civ. P. 23(a)(3))**.  Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the Class members.  Plaintiff, like all Class members, was injured in the same way through Defendant's deceptive marketing, packaging, labeling, and misrepresentations in connection with Defendant's Big Kid Booster seat models and Defendant's actionable conduct.

109.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**.    Pursuant to Rule 23(a)(4), Plaintiff and her counsel will fairly and adequately protect the interests of the Class. Plaintiff has no interest antagonistic to, or in conflict with, the interested of the Class members. Plaintiff has retained counsel experienced in prosecuting class actions and defective product cases.

110.    **Superiority (Fed. R. Civ. P. 23(b)(3))**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

111.    **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2))**. In the alternative, this action may properly be maintained as a class action, because:

a.    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant; or

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c.    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

112.    **Issue Certification (Fed. R. Civ. P 23(c)(4)).**  In the alternative, the common questions of fact and law above are appropriate for issue certification on behalf of the proposed Class.

## COUNT I

## FRAUDULENT CONCEALMENT

### (On Behalf of the Nationwide Class and the California Class)

113.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

114.    Plaintiff alleges this count for fraudulent concealment individually and on behalf of the proposed Nationwide Class and the California Class.

115.    Defendant failed to disclose the safety risks posed by its Big Kid Booster seats for children weighing less than 40 pounds and marketed its Big Kid Booster seats as "SIDE IMPACT TESTED," when internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries.

116.    Defendant was aware that its Big Kid Booster seats were not safe for children under 40 pounds in side-impact car crashes due to its own testing showing that the Big Kid Booster seats leave children – especially those under 40 pounds – vulnerable to catastrophic head, neck, and spinal injuries – or death.

117.    Nevertheless, Defendant, through its marketing material, targeted advertising, and website, and the packaging of its Big Kid Booster seats, consistently represented to Plaintiff and Class members that it was a safe product in side-impact car crashes for children who weigh less than 40 pounds. In these representations, Defendant deliberately and knowingly omitted material facts and made material misstatements relating to the safety risks posed by its Big Kid Booster seats for children weighing less than 40 pounds in side-impact car crashes, including by claiming:

- That the Big Kid Booster seats were safe for children who weigh less than 40 pounds;

- That the Big Kid Booster seats protected children from side-impact car crashes;

- That the Bid Kid Booster seats were "SIDE IMPACT TESTED" and provided side-impact protection without disclosing that its own internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries;

- That Evenflo "rigorously test all of [its] products … to make sure [its] products are safe," and its "Side Impact test protocol [] simulates the energy in severe 5-star government side impact tests conducted for automobiles," when in fact the only way the Big Kid Booster seats could fail the testing was if the child-sized dummy ended up on the floor or the booster itself broke into pieces.

118.   Plaintiff and the Class members relied on Defendant's omissions and misrepresentations in deciding to purchase its Big Kid Booster seats, or in deciding to purchase its Big Kid Booster seats at the price they paid for it.

119.   But for Defendant's omissions and misrepresentations regarding its Big Kid Booster seats, Plaintiff and the Class members would not have purchased Evenflo's Big Kid Booster seats.

120.   Defendant knowingly made the omissions and misstatements identified above with the intent to defraud Plaintiff and the Class members.

121.   Defendant had superior knowledge regarding the omissions and misrepresentations at issue, i.e., Defendant, and not Plaintiff, was in a better position to know the

safety risks posed by its Big Kid Booster seats for children weighing less than 40 pounds in side-impact car crashes.

122.   Defendant had a duty to disclose to Plaintiff and the Class members material facts regarding the safety risks posed by its Big Kid Booster seats for children under 40 pounds in side-impact car crashes.

123.   Consumers would not readily know the safety risks posed by its Big Kid Booster seats for children under 40 pounds in side-impact car crashes because Defendant actively withheld this information from consumers.  Consumers would also not readily know that internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries.

124.   Defendant, who actively withheld knowledge of its internal testing and the safety risks posed by its Big Kid Booster seats for children under 40 pounds in side-impact car crashes from consumers, was aware that consumers would be relying on these omissions and misstatements in deciding to purchase its Big Kid Booster seats.

125.   As a consequence of Defendant's fraudulent concealment, Plaintiff and the Class members were injured and seek damages in an amount to be proven at trial.

## COUNT II

## UNJUST ENRICHMENT

### (On Behalf of the Nationwide Class and the California Class)

126.   Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

127.   Plaintiff brings this count for unjust enrichment individually and on behalf of the proposed Nationwide Class and California Class.

128.    Plaintiff and each Class member conferred a benefit on Defendant by purchasing its unsafe Big Kid Booster seats, which allowed Defendant to enrich itself to the detriment of Plaintiff and the Class members.

129.    Defendant appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of selling an unsafe product.

130.    Under the circumstances, it would be inequitable to allow Defendant to retain this benefit, as it was obtained through deceptive representations and material omissions.

131.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

**COUNT III**

**(Breach of Express Warranty, Cal. Com. Code § 2313)**

**(On Behalf of the California Class)**

132.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

133.    Plaintiff brings this count individually and on behalf of the California Class.

134.    Defendant is and was at all relevant times a "seller" and "merchant" with respect to children's car seats and booster seats under Cal. Com. Code §2103(1)(d) and §2104(1).

135.    Plaintiff and California Class members are "buyers" of Defendant's Big Kid Booster seats under Cal. Com. Code §2103(1)(a).

136.    Defendant breached express warranties made to Plaintiff and California Class members.

137.    Defendant expressly warranted via their advertising, statements, website information, and product packaging that the Big Kid Booster seats were fit for their intended

purpose in that they would function properly as a booster seat, that the Big Kid Booster seats were suitable for children weighing under 40 pounds and that the Big Kid Booster seats were "side-impact tested."

138.    The statements made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises. Plaintiff and California Class members placed importance on Defendant's representations.

139.    Defendant's Big Kid Booster seats did not conform to the express representations; they do not function properly as a booster seat and are not safe for use, were not suitable for children weighing under 40 pounds, and do not pass any side-impact testing.

140.    As a result of Defendant's breach of the express warranty, Plaintiff and California Class members were injured and seek damages.

## COUNT IV
### (Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*, and Breach of Implied Warranty of Merchantability)

### (On Behalf of the California Class)

141.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

142.    Plaintiff brings this count individually and on behalf of the California Class.

143.    By its conduct alleged herein, Defendant violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq*. ("Song-Beverly Act" or "SBCWA"), and committed breach of implied warranty of merchantability.

144.    Every sale of consumer goods that are sold at retail are accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable. Cal. Civ. Code § 1792.

145.    The Big Kid Booster seats are "consumer goods" within the meaning of Cal. Civ.

Code § 1791(a).

146.     Defendant is a "manufacturer" and a "retail seller," "seller," and/or "retailer" within the meaning of Cal. Civ. Code § 1791(j) and (l).

147.     Defendants impliedly warranted to Plaintiff and California Class members that the Big Kid Booster seats were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

148.     Defendant expressly and impliedly warranted to Plaintiff and California Class members that the Big Kid Booster seats were merchantable and fit for use as a booster seat and are safe for use, suitable for children as small as 40 pounds, and passed side-impact testing based on the advertising, marketing, and sale of the Big Kid Booster as alleged herein.

149.     Defendant knew the Big Kid Booster seats were not merchantable in that they were not reasonably fit for the ordinary purposes for which they were manufactured and sold, namely, fit for use as a booster seat and are safe for use, suitable for children as small as 40 pounds, and passed side-impact testing. The Big Kid Booster seats were not sold "as is" nor as "with all faults."

150.     Because the Big Kid Booster seats are used by consumers and such warranties are either expressly made through advertising and statements made by Defendant or are implied by law in all consumer transactions, Plaintiff and California Class members who purchased such products are entitled to damages and other legal and equitable relief, including the purchase price or the amount representing overpayment for or reduction in value, and are also entitled to their attorney fees and costs. *See* Cal. Civ. Code §§ 1791.1(d) and 1794.

## **COUNT V**

**(Unfair Business Practices, California Business & Professions Code §§ 17200, et seq. Unfair Competition Law ("UCL"))**

**(On Behalf of Plaintiff and the California Class)**

151.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

152.    Plaintiff brings this count individually and on behalf of the California Class.

153.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

154.    During the relevant time period, Defendant engaged in unfair business practices by designing, marketing and distributing Big Kid Booster seats that are not safe for use and not suitable for children weighing less than 40 pounds.

155.    Defendant's practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and/or any utility of such practices is outweighed by the harm caused to consumers. Defendant's practices violate the legislative policies of the underlying statutes alleged herein: namely, protecting consumers and preventing persons from being injured. Defendant's practices caused substantial injury to Plaintiff and California Class members and are not outweighed by any benefits, and Plaintiff and California Class members could not have reasonably avoided their injuries.

156.    As a result of Defendant's unfair business practices, Plaintiff has suffered injury in fact and lost money because she bought the Big Kid Booster seat that is unsuitable for its ordinary purpose, was unsafe for use, and unsuitable for children weighing less than 40 pounds.

157.    Pursuant to Business and Professions Code §17204, Plaintiff and California Class members  are entitled to an order of this Court enjoining such conduct on the part of Defendant, restitution, and any other orders and judgments that may be necessary.

<u>**COUNT VI**</u>

**(Fraudulent Business Practices, California Business & Professions Code § 17200, *et seq*.)**

**(On Behalf of Plaintiff and the California Class)**

158.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

159.    Plaintiff brings this count individually and on behalf of the California Class.

160.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive reasonable consumers.

161.    Defendant has misrepresented the quality and suitability of use of its Big Kid Booster seats. Specifically, Defendant, through its marketing material, targeted advertising, website, and the packaging of its Big Kid Booster seats, consistently represented to Plaintiff and California Class members that the Big Kid Booster seats are safe for use, suitable for children weighing less than 40 pounds, and passed side-impact testing. In these representations, Defendant deliberately and knowingly omitted material facts and made material misstatements relating to the safety risks posed by its Big Kid Booster seats for children weighing less than 40 pounds in side-impact car crashes, including by claiming:

- That the Big Kid Booster seats were safe for children who weigh less than 40 pounds;

- That the Big Kid Booster seats protected children from side-impact car crashes;

- That the Bid Kid Booster seats were "SIDE IMPACT TESTED" and provided side-impact protection without disclosing that its internal side-impact testing showed that a

child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries;

- That Evenflo "rigorously test all of [its] products … to make sure [its] products are safe," and its "Side Impact test protocol [] simulates the energy in severe 5-star government side impact tests conducted for automobiles," when in fact the only way the Big Kid Booster seats could fail the testing was if the child-sized dummy ended up on the floor or the booster itself broke into pieces.

162. A business act or practice is "fraudulent" under the UCL if it is likely to deceive reasonable consumers.

163. Throughout the relevant time period, Defendant omitted material facts it was obligated to disclose regarding the safety risks and hazards of the Big Kid Booster seats, namely that they are of such poor quality they are not fit for the ordinary purposes for which the Big Kid Booster seats are used, are unsafe for use, are unsuitable for children weighing less than 40 pounds, and that its internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries. The facts concealed or not disclosed by Defendant with respect to the unsafe nature of the Big Kid Booster seats at issue are material in that Plaintiff and California Class members would have considered these facts to be a substantial factor in deciding whether to purchase Defendant's Big Kid Boosters seats and the price to pay for them. Defendant concealed these material facts and failed to disclosed the true nature of the Big Kid Booster seats on the product packaging themselves or on its website.

164. Based on the facts detailed herein, Defendant was under a duty to Plaintiff and California Class members to disclose the lack of safety of Big Kid Booster seats. Such a duty existed because Defendant had exclusive possession and knowledge of facts—that the Big Kid Booster seats were unsuitable for the ordinary purposes for which they are used—that were not

available to consumers and that were material. Defendant knew that its Big Kid Booster seats were unsafe through the testing it performed, however, Defendant concealed this information from Plaintiff and California Class members and distributed and sold the Big Kid Booster seats anyway to Plaintiff and California Class members. A reasonable purchaser would not anticipate that the Big Kid Booster seats were unsafe as there was no reason to believe as such.

165.    Such acts and practices of Defendant, as described herein, constitute "fraudulent" business practices under California Business and Professions Code §17200, *et seq.* in that such conduct was and is likely to deceive reasonable consumers into believing Defendant's Big Kid Booster seats were appropriate for children under 40 and side-impact tested.

166.    As a result of Defendant's fraudulent business practices, Plaintiff has suffered injury in fact and lost money terms of purchasing the Big Kid Booster seat that which she would not have otherwise bought.

167.    Pursuant to Business and Professions Code §17204, Plaintiff and California Class members  are entitled to an order of this Court enjoining such conduct on the part of Defendant, restitution, and any other orders and judgments that may be necessary.

## COUNT VII

**(Unlawful Business Practices, California Business & Professions Code § 17200, *et seq*.)**

**(On Behalf of Plaintiff and the California Class)**

168.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

169.    Plaintiff brings this count individually and on behalf of the California Class.

170.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

171.    Defendant's unlawful business practices and acts, as described herein, breached and continue to breach the implied warranty of merchantability, Cal. Civ. Code § 1791, *et seq.*;

violate the Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), § 1770(a)(7), and § 1770(a)(9); and violate California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, as alleged herein, by manufacturing and selling the Big Kid Booster seats that are unsuitable for normal use and the ordinary purposes for which the Big Kid Booster seats are used and through misrepresentations that were likely to deceive reasonable consumers.

172.    Plaintiff reserves the right to identify other violations of law as the facts develop.

173.    As a result of Defendant's unlawful business practices, Plaintiff has suffered injury in fact and lost money by purchasing the Big Kid Booster seat. Plaintiff would not have purchased the Big Kid Booster seat had she known the truth about the Big Kid Booster seats.

174.    Pursuant to Business and Professions Code § 17204, Plaintiff and Class members are entitled to an order of this Court enjoining such conduct on the part of Defendant, restitution, and any orders and judgments that may be necessary.

## COUNT VIII

**Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, *et seq.*)**

**(On Behalf of the California Class)**

175.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

176.    Plaintiff brings this count individually and on behalf of the California Class.

177.    California's False Advertising Law ("FAL") prohibits unfair, deceptive, untrue, or misleading advertising, including false statements as to worth, value and former price.

178.    The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

38

179.    Defendant's practice of representing to the Plaintiff and California Class members through its marketing material, targeted advertising, website, and the packaging of its Big Kid Booster seats, that its Big Kid Booster seats are safe, appropriate for children weighing under 40 pounds, and side-impact tested is a misleading advertising practice because it was not safe, not appropriate for children weighing under 40 pounds and because Defendant failed to disclose that its internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries.

180.    On each day throughout the Class Period, Defendant, with the intent to induce Plaintiff and California Class members to purchase its Big Kid Booster seats made or caused to be made each of the untrue or misleading statements, claims, or representations described herein.

181.    Defendant knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, or misleading.

182.    When Defendant made or caused to be made the untrue or misleading claims, statements, or misrepresentations described herein to consumers in California, Defendant failed to adequately disclose material facts pleaded herein, namely, that the Big Kid Booster seats would not function properly as a booster seat and are unsafe for use, that Big Kid Booster seats are not suitable for children weighing less than 40 pounds, and that Defendant's internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries. Plaintiff requests that this Court cause Defendant to restore monies paid to Defendant to Plaintiff and all other respective California Class members, and to enjoin Defendant from continuing to violate the FAL, or from violating the FAL in the future. Otherwise, Plaintiff and the California Class she seeks to represent may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT VIIII

**Violation of the California Consumers Legal Remedies Act, California Civil Code
Section 1750, *et seq.*)**

**(On Behalf of the California Class)**

183.   Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

184.   Plaintiff brings this count individually and on behalf of the California Class.

185.   Defendant, with the intent to induce Plaintiff and California Class members to purchase its Big Kid Booster seats, made or caused to be made false or misleading claims to consumers throughout California.

186.   Plaintiffs and California Class members are "consumers" within the meaning of California Civil Code § 1761(d).

187.   Customers' purchases of Defendant's Big Kid Booster seats are "transactions" within the meaning of California Civil Code § 1761(e).

188.   The Big Kid Booster seats purchased by Plaintiff and other California Class members throughout the Class Period are "goods" within the meaning of California Civil Code § 1761(a).

189.   Defendant engaged in unfair methods of competition, or unfair or deceptive acts or practices against Plaintiff and California Class members in violation of the California Consumers Legal Remedies Act (the "CLRA"), by making false or misleading statements of fact concerning the quality of the Big Kid Booster seats through the use of its marketing material, targeted advertising, website, and the packaging of its Big Kid Booster seats. Additionally, Defendant failed to disclose material facts that were within their exclusive knowledge, namely, that its Big Kid Booster seats would not function properly as a booster seat and are unsafe for

use, that the Big Kid Booster seats are not suitable for children weighing less than 40 pounds, and that Defendant's internal side-impact testing showed that a child seated in the Big Kid Booster faces a significant risk of serious or fatal injuries. Defendant did not disclose these material facts on the product packaging, on its website, or through its marketing material and targeted advertising.

190.    Defendant violated and continue to violate the CLRA by engaging in the following deceptive practices proscribed by the California Civil Code § 1770(a) that constitute transactions intended to result in, and that did result in, the sale of the Big Kid Booster seats herein to Plaintiff and the California Class:

a.    Representing that the goods have characteristics, uses or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b.    Representing that the goods are of a particular standard, quality or grade if it is of another (Cal. Civ. Code § 1770(a)(7)); and

c.    Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)).

191.    As described herein, by purchasing Defendant's Big Kid Booster seats, Plaintiff and the California Class suffered damage by the wrongful acts and practices of Defendant, in violation of California Civil Code § 1781. Absent these acts or practices, Plaintiff and California Class members would not have purchased Defendant's Big Kid Booster seats.

192.    Pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all California Class members, requests that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts or practices alleged herein. Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA,

consumers will continue to be harmed by Defendant's acts or practices in the same way as those acts or practices have harmed Plaintiff and California Class members.

193.    Plaintiff will provide notice to Defendant of the alleged violations of the CLRA and the UCL in compliance with Cal. Civ. Code § 1782(a). If Defendant does not cure the alleged misconduct, Plaintiff will amend this Complaint to seek damages pursuant to this claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, pray for relief as follows:

A.    An order certifying the Nationwide Class and California Class and designating Plaintiff as the named representative of the Class and designating her attorneys as Class Counsel;

B.    A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Big Kid Booster seats;

C.    An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

D.    An order enjoining Defendant from further engaging in the misconduct alleged herein;

E.    For restitution of all money or property wrongfully obtained by Defendant;

F.    An award of attorneys' fees, costs, and expenses;

G.    An award of pre-judgment and post-judgment interest, as provided by law;

H.    Leave to amend the Complaint to conform to the evidence produced at trial; and

I.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Nationwide Class and California Class, hereby demands a trial by jury of all claims so triable.

DATED: April 29, 2020                **TODD & WELD LLP**

                                     */s/ Christopher Weld*_____

                                     Christopher Weld (BBO # 522230)
                                     **TODD & WELD LLP**
                                     One Federal Street
                                     Boston, MA 02110
                                     Telephone: (617) 720-2626
                                     Email: cweld@toddweld.com


                                     **LEVI & KORSINSKY LLP**
                                     Rosemary M. Rivas (*pro hac vice* to be filed)
                                     rrivas@zlk.com
                                     388 Market Street, Suite 1300
                                     San Francisco, CA 94111
                                     Telephone: (415) 373-1671
                                     Email: rrivas@zlk.com

                                     *Attorneys for Plaintiff and Proposed Classes*